UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTINE M. DAVISON**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | Civ. No. 18-15840 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Christine M. Davison brings this action pursuant to 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Child's Insurance Benefits and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. Davison seeks to reverse the finding of the Administrative Law Judge ("ALJ") that she has not met the Social Security Act's definition of disabled since January 31, 2013, the alleged disability-onset date.[1]

The question is whether the ALJ's decision is supported by substantial evidence. Specifically, Davison contends that the evidence does not support the ALJ's findings as to (i) whether she is presumptively disabled and (ii) her residual functional capacity ("RFC").

For the reasons stated below, the decision of the ALJ is **AFFIRMED**.

---

[1]  Originally, the alleged disability-onset date was June 29, 2008. However, at her hearing before the ALJ, Davison amended her onset date to reflect the fact that a previous adjudication had barred her claims through the period ending January 30, 2013. (R. 831).

## I. BACKGROUND[2]

On June 12, 2014, Davison filed an application for SSI under Title XVI of the Social Security Act asserting that she was disabled as of June 29, 2008 (later amended to January 31, 2013, *see* n. 1, *supra*). (R. 237). Her application was initially denied on July 28, 2014 (R. 166) and upon reconsideration on November 13, 2014. (R. 831).

On December 2, 2016, Davison, represented by an attorney, appeared and testified before the ALJ. (R. 24, 26-52). Testimony was heard from Brian Daly, a Vocational Expert ("VE"). (R. 48-50) On March 15, 2017, the ALJ issued a decision finding that Davison was not disabled within the meaning of the Social Security Act. (R. 831-840). The ALJ determined that Davison had attained the age of 22 prior to the alleged onset date, and that her impairments, specifically bipolar disorder and anxiety, were severe, though not of listing-level severity. (R. 832, 834). He concluded that Davison, given her RFC, was able to perform work existing in significant numbers in the national economy. (R. 839).

## II. STANDARD

To qualify for child's insurance benefits, a claimant must be 18 years old or older and have a disability that began before the claimant attained the age of 22. 20 C.F.R. § 404.350(a)(5). To qualify for SSI, a claimant must meet income and resource limitations, and show that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[2] Citations to the record are abbreviated as follows:

| | | |
|---|---|---|
| "DE __" | = | Docket entry in this case; |
| "DE 22" | = | Davison's brief; |
| "DE 27" | = | The Commissioner's brief; |
| "R. __" | = | Administrative Record (DE 6, 7) (the ALJ's decision was separately filed as DE 7 but consecutively paginated) (page numbers refer to the page numbers in the lower-right corner of the page—not the ECF docket page numbers). |

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high

level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may,

under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

### B. The ALJ's Decision

The ALJ followed the five-step process in determining that Davison was not disabled. The ALJ's findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Davison had not engaged in substantial gainful activity since January 31, 2013, the amended alleged onset date.[3] (R. 833).

**Step Two:** At step two, the ALJ determined that Davison had the following severe impairments: bipolar disorder and anxiety. (R. 834).

**Step Three:** At step three, the ALJ determined that Davison did not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 834-836).

Under Listings 12.04 and 12.06 for mental disorders, the ALJ concluded that Davison's impairments did not cause at least two "marked" limitations, or one "extreme" limitation, under the Paragraph B criteria for mental functioning. (R. 834). To satisfy the Paragraph B criteria, a claimant's mental disorder must result in an extreme limitation of one, or a marked limitation of two, of the four Paragraph B areas of mental functioning.

---

[3]     *See* n. 1, *supra.*

Of the four areas evaluated for mental functioning, the ALJ found that Davison had moderate difficulty in three areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. (R. 834-835). He found that she experienced marked limitations in area four: adapting or managing herself. (R. 835).

The ALJ also considered whether Davison satisfied the Paragraph C criteria. (R. 835). He concluded that she did not, because the medical evidence of record did not show that she satisfied Section 2 of the Paragraph C criteria. (R. 835-836).

**Step Four:** At step four, the ALJ determined that Davison had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: She could understand, remember, and carry out simple instructions; have occasional interactions with co-workers, supervisors, and the general public; and handle changes to essential job functions on an occasional basis. (R. 836).

The ALJ also determined that Davison did not have past relevant work. (R. 838).

**Step Five:** At step five, the ALJ considered Davison's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines. (R. 839). Relying on the testimony of the VE, the ALJ identified several representative jobs that Davison could perform: (1) Counter Clerk (Director of Occupational Titles ("DOT") #249.366-010); Parking Lot Attendant (DOT # 915.478-010); and Cashier II (DOT # 211.462-010). (*Id.*). The ALJ also determined, based on the VE's testimony, that a significant number of these jobs were available nationally. (*Id.*).

Accordingly, the ALJ determined that Davison was not under a disability, as defined in the Social Security Act, since January 31, 2013. (*Id.*).

**III.   DISCUSSION**

Davison argues that the ALJ erred in determining her limitations at Step 3, ignored critical evidence in establishing her RFC, and failed to consider the effect of her obesity.,

**A. Step 3 Evaluation**

Davison argues that the ALJ did not consider the cumulative effect of her mental impairments in conducting the Step 3 evaluation. Specifically, she argues that the ALJ did not properly evaluate the Paragraph B and C criteria. (Pl. Br. at 20).

*1.   Paragraph B Criteria*

First, she claims that the ALJ erred in determining the third Paragraph B criterion: concentrating, persisting, or maintaining pace. (Pl. Brf. at 15). The ALJ found that this limitation was "moderate", whereas Davison believes it ought to have been "marked." (R. 834-835). This area of focus "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." *See* 20 C.F.R., pt. 404, subpt. P, § 12.00(E)(3).[4]

Davison points to the opinion of Dr. Brown, a consultative psychologist retained by the Commissioner to examine her in connection with her application. (R. 741). Dr. Brown, she says, opined that she "appears to be limited intellectually and has poor focus and concentration and should not be allowed to manage her own funds." (R. 739-740). She also references other of his findings that illustrate marked limitations. (Pl. Brf. at 16).

The ALJ concluded the following regarding Davison's capacity for concentrating, persisting or maintaining pace:

---

[4]   Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R., pt. 404, subpt. P, § 12.00(E)(3).

7

> The medical evidence of record shows the claimant generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace. The claimant often reported adequate symptom control from psychiatric medications. Mental status examination results show the claimant had no serious problems with memory, or simple calculations. Additionally, treating practitioners did not observe that the claimant was overly distractible or slow. The claimant has reported watching TV and reading for pleasure, which requires from concentration and persistence. She has also reported doing a variety of daily tasks that require some concentration, persistence, and pace.

(R. 835).

Substantial evidence supports the determination that Davison's limitations were "moderate" rather than "marked." All of the evidence cited above points to some level of impairment, but demonstrates that Davison was not entirely debilitated in terms of concentration. The ALJ did not ignore the evidence of her limitations altogether. He concluded that limitations did exist and were moderate.

Moreover, it is not clear that Davison's reading of Dr. Brown's report is correct. As the Commissioner notes, the statement that Davison "has poor focus and concentration" appears under the heading "Ability to Manage Funds"; it appears to be limited to that topic, and does not appear to be intended as a general comment on Davison's ability to concentrate. (R. 739-740).

Even if Dr. Brown's report expressly indicated that Davison had a marked limitation, which it did not, the ALJ would not have been required to privilege that conclusion above other evidence. The ALJ was of course required to consider Dr. Brown's report. *See Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356 (3d Cir. 2011) ("State agent opinions merit significant consideration . . . ."). It appears that he did so. The ALJ explained the results of mental status reports, including Dr. Brown's. True, the ALJ did not cite the report by name, but in concluding that "mental status exams showed no serious problems with memory or simple calculations," the ALJ cited to the exhibit consisting of Dr.

8

Brown's report. (R. 835). The ALJ did in fact consider Dr. Brown's report and aggregated the information therein into a general pronouncement. Thus this is not a case where in which the ALJ ignored or failed to explain his rejection of an expert's finding of disability. Dr. Brown did not say Davison was disabled, and the ALJ's summary of the mental status reports is consistent with his findings.

The record does not indicate that the Plaintiff had more than moderate limitations in maintaining concentration, or that the ALJ lacked substantial evidence for his conclusions. The evidence Davison now cites relates more specifically to her ability to adapt and manage herself—another Paragraph B criterion—the ALJ did find she had marked limitations in that area.

Accordingly, I find that the ALJ properly considered the evidence, including Dr. Brown's report, in coming to the conclusion that Davison had a moderate limitation in concentrating, persistence, and maintaining pace. Substantial evidence also existed for the other Paragraph B criteria, which Davison does not challenge.

### 2. *Paragraph C Criteria*

Davison next argues that the ALJ erred in determining whether she satisfied the Paragraph C criteria. She claims that the ALJ's determination was conclusory and wrongfully put the burden on the Plaintiff to point to specific evidence supporting the finding. She also argues that the conclusion was made in the face of uniform evidence to the contrary. (Pl. Brf. at 17-20).

Paragraph C is a component of the listing analysis for certain mental disorders, including the two that Davison complains of:

> Paragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15 provides the criteria we use to evaluate "serious and persistent mental disorders." To satisfy the paragraph C criteria, your mental disorder must be "serious and persistent"; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2 (see 12.00G). (When we refer to "paragraph C" or "the paragraph C criteria" in the introductory text of this body system, we mean the criteria in paragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15.)

9

20 C.F.R. Pt. 404, subpt. P., app. 1., § 12.00(A)(1)(c).

> Section 12.00G describes the two sections in detail:
>
> The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.
>
> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, subpt. P., app. 1., § 12.00(G)(2)(b);(c).

Davison is correct that, when discussing Paragraph C, the ALJ stated simply that the Plaintiff did not satisfy the requirements. (R. 835). However, Davison does not explain why this was insufficient. The ALJ outlined the relevant evidence at length when analyzing the Paragraph B criteria in the

preceding paragraphs. He found that the Plaintiff satisfied section C1 but that there was no evidence to support a finding under C2. (R. 835).

Neither Davison nor the Commissioner points to any authority articulating the template for analyzing Paragraph C criteria. One possible template is that deeper analysis is required only when the record reflects some evidence that the criteria are fulfilled. *See Searles v. Comm'r of Soc. Sec.*, No. 18-cv-15804, 2019 WL 6337890, at *6 (D.N.J. Nov. 27, 2019) (holding that the ALJ did not adequately support her Paragraph C analysis where the ALJ failed to explain how strong evidence that the Plaintiff could not function independently was outweighed by other evidence). But in cases where no such evidence exists, a brief mention of the criteria can be sufficient. *See Lewis v. Comm'r of Soc. Sec.*, No. 15-cv-06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Although the ALJ only briefly addressed the matter, no more seemed to be necessary. Paragraph C deals with criteria related to adapting to work and being able to live alone, and multiple documents from the record support the conclusion that there [were] no criteria to examine in this regard.").

Davison does not point to specific evidence supporting the conclusion that there were any such criteria to examine. She explains that the "medical and life-experience evidence overwhelmingly confirms the uncontradicted reality that plaintiff meets the C criteria and the ALJ's own paragraph B finding that plaintiff suffers 'marked limitations' denoting 'serious problems in adapting and managing oneself' should be seen as endorsing that conclusion." (Pl. Brf. at 18). She argues that she cannot function outside her mother's home, cannot attend psychotherapy sessions without her mother sitting in, and could not tolerate her senior year of high school. (Pl. Brf. at 19).

This hyperbolic survey does not demonstrate that the Plaintiff is unable, as of 2013, to function outside of her home. As the ALJ noted, she frequently leaves her house to socialize and engage in activities. (R. 835). She went on a vacation with her family and her fiancé. (*Id.*). Her updated treatment records showed that when she was compliant with her medications, she was stable and

11

handled typical daily activities on her own. (*Id.*). The ALJ was not required to reiterate it when assessing whether she met Paragraph C criteria. Nor does Davison point to any evidence indicating that she really did meet those criteria.

Davison attempts to throw responsibility back on the ALJ, or this Court. She contends that it is neither her nor her attorney's responsibility to "spoon-feed each element to the ALJ in digestible portions." (Pl. Brf. at 19). To Davison, her burden is met when the evidence is "produced," that is, when she has submitted the medical reports. In some sense that is true, but on appeal she must still point to some error by the ALJ.

The burden was on the claimant to establish that she meets the criteria. She did not meet her burden and does not suggest on appeal how she could or did do so. Davison points to no medical evidence that she has been unable to function independently. As discussed above, the record indicates that she can. No more than a brief mention of the Paragraph C criteria was therefore required. Accordingly, I find that the ALJ's determination that the Plaintiff did not satisfy Paragraph C criteria was supported by substantial evidence.

### 3. *Sufficiency of RFC Analysis*

Davison makes a number of arguments that the ALJ did not appropriately factor in various strands of evidence in determining her RFC. She claims that "[t]here are no reasons given, there is very little evidence articulated in support and the majority of the evidence is both omitted and contradictory to the ALJ's findings." (Pl. Brf. at 27). This argument is essentially two-fold: (1) there was not enough positive evidence to support the ALJ's RFC determination and (2) the evidence cited was in fact contradictory to omitted evidence.

As for the first argument, the ALJ surveyed the record evidence thoroughly. He noted evidence that indicated Davison was able to function at a relatively normal level, and explained why that outweighed evidence that she could not. For example, the ALJ mentioned an August 2011 hospital visit "based upon serious symptomatology[.]" (R. 837). However, the ALJ discounted the impact of this visit on the Plaintiff's disability status because it occurred following non-compliance with treatment and medications, and it appeared to

be anomalous in relation to Davison's otherwise stable and improved condition. (*Id.*). The ALJ summarized the theme of the record by noting that Davison "has received conservative mental health treatment, has not had any crises, and appears on balance to be getting better control of her symptoms." (R. 838).

Davison points to evidence that her situation is worse than the ALJ accepts. She argues that it cannot be the case that she can occasionally interact with coworkers and handle changes to essential job functions when the ALJ himself found that she had marked and moderate limitations in those abilities. (Pl. Brf. at 24). She also argues that even though the evidence shows that she has sufficient intellect to perform job duties, she lacks the ability to control herself, which renders her intellect "entirely irrelevant." (Pl. Brf. at 25).

A finding that a claimant has marked or moderate limitations does not automatically require an RFC that she cannot function in those areas at all. It is the role of the ALJ to craft the RFC. The marked and moderate limitations were just that—limitations. They were incorporated into the RFC. To support the theory that she could have "occasional" interactions with others, the ALJ cited her treatment notes which indicated that "she consistently denied any mood swings, any feelings of being overwhelmed or sadness. She also denied any symptoms of mania, crying spells, disturbed sleep or preoccupation." (R. 837). Davison argues that her personality disorder overrides her average intelligence, but the ALJ was not required to accept that argument. Instead, he outlined positive evidence showing Davison could behave within acceptable limits.

Davison also claims that basing this RFC on the findings of consultative examinations without specifying the examiners by name somehow runs afoul of the ALJ's duties, but she does not provide any legal support for that contention. Further, a key finding of the ALJ's opinion is the fact that "[t]here are no treating physician medical source statements opining that claimant was disabled." (R. 837). The ALJ did not need to engage in any deductive reasoning discounting opinions that the Plaintiff was disabled because there were none. I

13

disagree with Davison's contention that the ALJ did not survey enough evidence to support the RFC determination.

As for the second argument, it is not accurate to say that the majority of the evidence is both omitted and contradictory. Davison points to a report from one Dr. Baharlias describing symptoms of bipolar disorder and an older report from Dr. Brown.[5] (Pl. Brf. 26-27). These reports do not represent the majority of evidence. The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as Davison seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements.

Moreover, the ALJ's conclusions are not contradicted by these reports, which date from before the claimed period of disability. Dr. Baharlias interviewed the Plaintiff on January 26, 2010. (R. 510). He consulted with the patient in conjunction with a disability benefits application, and was not her regular treating physician. (*Id.*). He described her behavior during the visit as "cooperative and appropriate, and very frank." (R. 511). Symptoms were typical of the symptoms described in other reports: she exhibited signs of bipolar disorder, sometimes became confrontational with her mother, and had an impaired emotional range. (*Id.*). He also mentioned that "there is a history of violence when explosive." (R. 512). Davison draws attention to the finding that she had difficulty with serial 7s. (R. 511). However, nothing in this report contradicts the evidence that the ALJ cited indicating that Davison's symptoms had generally been under control following her August 2011 hospitalization. Nor do the findings indicate that her symptoms were worse than those described by the ALJ in his RFC analysis.

Dr. Brown's older report is similar. He interviewed the Plaintiff on March 14, 2011 (prior to her August 2011 hospitalization). (R. 604). Dr. Brown

---

[5] Davison also seems to argue that the ALJ was not permitted to rely on reports of the patient prior to the amended alleged onset date. She provides no legal support for that claim, and even if she did, the argument is contradictory. The older reports are her only evidence that the ALJ ignored indicia of disability.

14

described Davison as depressed and apathetic. (R. 605). He also reported that she had a history of agitation, including starting physical altercations with little provocation. (*Id.*). He also, however, witnessed her as "pleasant and cooperative" during the examination. (*Id.*). In this visit, too, she had difficulty with serial 7s. (R. 606). However, she also described a relatively ordinary level of functioning; she had relationships with friends and family, managed her own money, and spent time watching television and bowling. (*Id.*). Dr. Brown diagnosed her with bipolar disorder, and explained that her prognosis was "fair" contingent on her continuing to benefit from mental health care. (R. 607).

This report, like the report of Dr. Baharlias, demonstrates a patient profile consistent with the one described by the ALJ. The ALJ acknowledged her emotional limitations. (R. 836-837). But the ALJ also found that the evidence supported a conclusion that the Plaintiff had improved since 2011 and generally can function normally when receiving treatment. (R. 837). He makes numerous citations to the record to support this finding. (*Id.*). Davison is therefore incorrect that the ALJ hid the majority of the evidence, which would show her as disabled. On the contrary, the ALJ cites to substantial evidence supporting his RFC finding, and that finding is not contradicted by these older reports or other evidence in the record.

I therefore find that the ALJ's determination of the RFC was supported by substantial evidence.

### 4. *Consideration of Plaintiff's Obesity*

Davison argues that the ALJ's RFC determination was tainted by a failure to consider the effects of her obesity. (Pl. Brf. at 28-33). She cites a case suggesting that the ALJ must consider obesity at every step of the analysis. (Pl. Brf. at 31 (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 504 (3d Cir. 2009)). But in that case, the Plaintiff asserted that his obesity impacted his job performance, and the ALJ had agreed that the impairment was severe. *Diaz*, 577 F. 3d at 504. True, references to obesity in physician reports are enough to put the ALJ on notice that obesity could be a factor in the ALJ's analysis. *Id.*

15

But the Plaintiff is still required to argue that her obesity would impact her job performance. *Id.* To warrant remand, the Plaintiff would have to explain how "obesity impacts [her] functioning or ability to work or identif[y] medical evidence of the same . . . ." *Cosme v. Comm'r of Soc. Sec.*, No. 18-cv-01327, 2020 WL 2079284, at *4 (D.N.J. April 30, 2020). She does not.

Davison's disability report listed "[b]ipolar disorder, depression, anxiety" as disabling factors. (R. 286). While she does point to medical evidence documenting her obesity, she does not point to any evidence showing that her obesity would impact her ability to perform any job, nor does she even make an argument that it does. Accordingly, I will not remand on this basis.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed. An appropriate order accompanies this Opinion.

Dated: July 2, 2020

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**